# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| XIEN HUANG NAPODANO, Individually and as Representative of the Estate of Caleb Napodano | § § § § | Civil Action No. 4:18-cv-302 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| ERICSSON INC. SHORT TERM | § | |
| DISABILITY PLAN | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Parties' respective motions for summary judgment (Dkt. #10; Dkt. #12). After careful consideration, Defendant's motion will be granted while Plaintiff's will be denied.

## BACKGROUND

Plaintiff Caleb Napodano[1] worked at Ericsson Inc. ("Ericsson") and was a member of its various employee benefits plans, including its Long-Term Disability Plan and Short-Term Disability Plan. Both plans provide employees with some or all of their income while they are on leave from work due to a disability. On August 22, 2017, Napodano placed a signed letter on his manager's chair, instructing Ericsson's Human Resources team to "consider today Tuesday 08/22/2017 [his] last working day." (Dkt. #12, Exhibit 2 at p. 390). Napodano explained that he was "resigning due to on-going illness issues with [his] health," that the HR Team "w[ould] find [his] work laptop below [his] letter of resignation, and [that his] work badge w[ould] be left downstairs with the security officer." (Dkt. #12, Exhibit 2 at p. 390). Ericsson construed

---

[1] The Court appreciates that Caleb Napodano has passed, and that his estate has since substituted him as the formal plaintiff in this case. For simplicity, the Court nevertheless refers to Caleb Napodano as the plaintiff.

Napodano's letter as a resignation and "honored [his] request to process the resignation with the effective date of 8/22." (Dkt. #12, Exhibit 2 at p. 94).

A few days later, Napodano submitted a claim for long-term disability benefits to Prudential Insurance Company of America ("Prudential"), the claims administrator for Ericsson's long-term disability plan. Prudential subsequently denied the claim. It noted that, to be eligible for long-term disability benefits, claimants are required to seek short-term disability benefits first. Prudential then referred Napodano's claim for long-term disability benefits to Sedgwick Claims Management Services, Inc. ("Sedgwick"), the claims administrator for Ericsson's Short-Term Disability Plan. Sedgwick agreed to process his claim as one for short-term disability benefits.

Sedgwick denied the claim about a week later, finding him ineligible for benefits under Ericsson's Short-Term Disability Plan. The corresponding Summary Plan Description (the "SPD"), which sets out the benefits the plan offers, provides that "coverage under the Plan ends on the earliest of" four dates. These include:

1. The date the Plan terminates;

2. The date [the claimant] no longer meet[s] the definition of Eligible Employee;

3. The last day [the claimant is] in Active Employment; and

4. The date [the claimant is] no longer in Active Employment due to a Disability that is not covered under the Plan.

(Dkt. #12, Exhibit 1 at p. 15). Ericsson argues that, once Napodano resigned, he was no longer an "Eligible Employee." (Dkt. #12, Exhibit 1 at p. 15). Napodano questions whether his letter can constitute a formal resignation. He contends that, based on a conversation he had with Ericsson's Human Resources team, he believed that he needed to resign to be eligible for long-term disability benefits. He also notes that, because the fourth possible termination date is triggered only if he is "no longer in Active Employment due to a Disability . . . *not covered under the Plan*," his coverage

did not end because he stopped working due to a disability that was covered (Dkt. #12, Exhibit 1 at p. 15) (emphasis added). Ericsson, on the other hand, stresses that coverage ends on the "earliest" of the four dates and that, once Napodano's employment status ended, the second possible termination date went into effect since he was no longer an "Eligible Employee." (Dkt. #12, Exhibit 1 at p. 15).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant

bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## DISCUSSION

ERISA requires the Court to review determinations made by employee benefit plans, including employee disability plans. *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir.2004). If a plan document expressly confers on the plan administrator the authority to determine benefits and construe the plan terms, that is sufficient to invoke an abuse of discretion standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir.2014). Ericsson contends that the abuse of discretion standard should apply here, and the Court agrees. As Ericsson explains, this is because:

4

> [I]n the SPD, Ericsson Inc., as the Plan Administrator, delegated Prudential, and subsequently Sedgwick, with the responsibility to act on behalf [of] the Plan Administrator. (Ericsson 0164). The SPD further provides that, with respect to ERISA, Sedgwick will be the appropriate named fiduciary for purposes of denial and/or review of denied claims under the STD Plan. (Ericsson 0165). In exercising its fiduciary responsibility, Sedgwick, as claim administrator, was conferred with the discretionary authority to determine eligibility for benefits; to determine the amount of benefits for each claim received; to handle any appeal of a denied claim; and to interpret and construe the terms of the STD Plan. (Ericsson 0165).

(Dkt. #12 at pp. 11–12). *See Burell v. Prudential Ins. Co. of America*, 820 F.3d 132, 137 (5th Cir. 2016) ("As the Plan expressly gives Prudential discretionary authority, the district court did not err in reviewing the denial of Burell's long-term disability-benefits claim under an abuse of discretion standard.") (footnote omitted).

The Court must therefore decide whether Ericsson abused its discretion in denying Napodano's request for short-term disability benefits. Courts in the Fifth Circuit apply a "two-step process" when reviewing a "plan fiduciary's interpretation of its plan." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir.2004). The court first determines whether the administrator correctly interpreted the plan. If not, "the court must then determine whether the administrator's decision was an abuse of discretion." *Id.*

Ericsson correctly interpreted the plan here. As stated, the SPD provides that "coverage under the Plan ends on the earliest of" four dates:

1. The date the Plan terminates;

2. The date [the claimant] no longer meet[s] the definition of Eligible Employee;

3. The last day [the claimant is] in Active Employment; and

4. The date [the claimant is] no longer in Active Employment due to a Disability that is not covered under the Plan.

(Dkt. #12, Exhibit 1 at p. 15).

Napodano argues that, under the fourth possible termination date, coverage ends if a claimant is "no longer in Active Employment due to a Disability that is not covered under the Plan." (Dkt. #12, Exhibit 1 at p. 15). According to Napodano, this means that coverage necessarily continues if a claimant is not in Active Employment due to a Disability *that is covered under the Plan*. While this interpretation might have been persuasive if the fourth possible termination date were *the sole* grounds for ending coverage, that is not the case here. The SPD provides that "coverage under the Plan ends *on the earliest* of" the four possible termination dates. (Dkt. #12, Exhibit 1 at p. 15) (emphasis added). This means that coverage necessarily ends if *any* of the possible termination dates are triggered.

The circumstances in this case implicate the second possible termination date, which provides that coverage ends once a claimant is no longer an "Eligible Employee." (Dkt. #12, Exhibit 1 at p. 15). The SPD defines an "Eligible Employee" as "[a] regular Employee on Ericsson's U.S. payroll who has a Domicile in the U.S." who is either (a) "[r]egularly scheduled to work at least thirty (30) hours per week;" or (b) "on an approved, paid Leave of Absence" after previously being scheduled for at least 30 hours per week (Dkt. #12, Exhibit 3 at p. 6). In this case, Napodano provided Ericsson with a letter stating that he resigned on August 22, 2018, and exchanged correspondence with his former co-workers confirming that he had, in fact, resigned on that date. Ericsson also construed Napodano's letter as a resignation and "honored [his] request to process the resignation with the effective date of 8/22." (Dkt. #12, Exhibit 2 at p. 94). This means that, following that date, Napodano stopped being an "Eligible Employee" covered by the Plan for at least three reasons. Napodano was no longer (1) a "regular [e]mployee," (2) on Ericsson's payroll, or (3) either scheduled to work thirty hours per week or on a paid leave of

absence.[2]  Accordingly, when Napodano sought short-term disability benefits *after he advised them of his "resignation," see supra* note 2, Sedgwick properly denied his claim.

Napodano contends that he did not need to file his claims before his resignation under the Plan's Proof of Loss Provisions.  These provisions state that claims can be submitted *at least* 90 days after the "Elimination Period," which was seven (7) days (Dkt. #10, Exhibit 1 at pp. 7, 22). According to Napodano, this means that he could have waited at least 97 days to file his claim for benefits.  But, while the Proof of Loss provisions allow Napodano to *file* a claim within this time, they do not *extend his coverage* beyond the last day of his employment.  Because Napodano was seeking benefits that *would start after August 22, 2017*—not payment for his *prior* use of benefits *before his coverage ended*—his request was properly denied.

The Court therefore does not address Napodano's argument that the decision to deny his claim constitutes an abuse of discretion stemming from the decisionmakers' purported conflict-of-interest.  *See Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009) (citing *Metro. Life Insurance, Co. v. Glenn*, 554 U.S. 105, 108 (2008)) ("This Circuit does not consider a conflict of interest until the second stage of the analysis because if an administrator's interpretation is legally correct no abuse of discretion could have occurred.  Therefore, *Metropolitan Life* has no relevance to the district court's determination that the Administrator and

---

[2] Napodano asks the Court to find that Napodano did not resign—his letter stating otherwise apparently notwithstanding.  He claims that he only submitted the resignation letter after Ericsson's Human Resources team told him "to leave a note for his boss explaining he would not be at work" and to "contact his disability insurer to start the claim." (Dkt. #10 at p. 1).  But Napodano has not cited any case law or legal principles allowing the Court to disregard a resignation letter under these circumstances.  *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)) ("A party 'waives an issue if he fails to *adequately* brief it.'") (emphasis added).    Napodano's argument is unavailing, regardless.  Napodano's status as an "regular employee" (potentially eligible for coverage) does not turn on whether or not Ericsson correctly interpreted Napodano's letter.  If Napodano resigned, then he was no longer a "regular employee" once the letter was submitted. If Napodano did not resign, on the other hand, then Ericsson terminated him on receipt of the letter.  The latter might have entitled Napodano to damages on a wrongful termination claim under the Americans with Disabilities Act.  But, for purposes of the benefits denial claim before the Court, once Ericsson severed its relationship with Napodano, he stopped being a (1) "regular employee" (2) on Ericsson's payroll who (3) was either scheduled to work thirty hours per week or on a *paid* leave of absence.

Committee's decision was legally correct.  If we agree with that conclusion, we need not consider whether there was a conflict of interest or an abuse of discretion.") (quotations and citations omitted).[3]

## CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. #12), and **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. #10).

**IT IS SO ORDERED.**

**SIGNED this 15th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] *See also Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir. 1998) ("Only if the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion."); *accord Ellis*, 394 F.3d at 270.